# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**LEISHA REAVES,** individually, on behalf of herself and all others similarly situated,

       Plaintiff,

  **v.**

**CABLE ONE, INC.,**

       Defendant.

CASE NO.: 11-CV-3859-PWG

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Michael R. Pennington
Robert J. Campbell
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Fax: (205) 521-8800
mpennington@babc.com
rcampbell@babc.com

Eric C. Bosset
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 662-5606
Fax: (202) 662-6291
ebosset@cov.com

Michael D. Hays
Jonathan D. Hart
DOW LOHNES PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC  20036-6802
Telephone:  (202) 776-2000
Fax:  (202) 776-2222
mhays@dowlohnes.com

Simon J. Frankel
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111
Telephone:  (415) 591-6000
Fax:  (415) 591-6001
sfrankel@cov.com

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................2

I. The Parties Agree that Griffin Precludes Tolling of Plaintiff's Class Claim. ..................................................................................................2

II. The Facts Alleged in the Complaint and Subject to Judicial Notice Establish that Plaintiff's Lawsuit Is Time-Barred. ............................3

    A. Plaintiff Misstates the Standard Governing a Motion To Dismiss. .................................................................................4

    B. Plaintiff First Had a Reasonable Opportunity To Discover This ECPA Claim in 2008. ...........................................................6

        1. Cable One's Disclosure of the NebuAd Test to Congress, Coupled with Plaintiff's Allegation of Diminished Computer Performance During the NebuAd Test, Provided a Reasonable Opportunity for Her To Discover the Alleged Interception of Her Internet Communications in 2008..................................................................................8

        2. The November 2008 Filing of the Valentine Complaint ..........11

III. Plaintiff's Individual Claim Is Not Tolled.....................................................14

CONCLUSION ......................................................................................................15

## INTRODUCTION

As the third incarnation of a putative class action that has been dismissed twice already, Plaintiff's complaint is a poster child for the anti-stacking rule articulated by the Eleventh Circuit in *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994).  This rule, which Plaintiff *concedes* is a bar to tolling her class claim, was designed precisely to prevent what Plaintiff attempts to do here:  "piggyback one class action onto another and thereby engage in endless rounds of litigation … over the adequacy of successive named plaintiffs to serve as class representatives." *Id.* at 359 (internal citations omitted).

In her opposition brief, Plaintiff strains to no avail to evade this straight-forward application of settled Eleventh Circuit law, arguing that the statute of limitations never ran against her because she did not actually possess information about her claim.  However, Plaintiff completely ignores that, for purposes of triggering ECPA's statute of limitations, her subjective state of mind is not the issue.  The relevant question is *not* when Plaintiff actually became aware of the facts on which she bases her claim, but whether Plaintiff had a *reasonable opportunity* to discover the alleged violation more than two years before she filed this action, as did other members of her putative class who filed two previous lawsuits against Cable One, the first in November 2008.

Plaintiff's misplaced reliance on a subjective standard is just one of several fatal flaws in her opposition. She also (1) relies on an erroneous standard for resolving a motion to dismiss that the Supreme Court has expressly rejected, (2) mischaracterizes the application of the Rule 12(b)(6) standard to the statute of limitations, and (3) misapplies *Griffin* to Plaintiff's individual claim. Because Plaintiff's arguments fail to defeat the conclusion that her complaint is time-barred as a matter of law, the Court should dismiss the case.

## ARGUMENT

### I. The Parties Agree that *Griffin* Precludes Tolling of Plaintiff's Class Claim.

The Eleventh Circuit categorically ruled in *Griffin* that the *American Pipe* tolling doctrine does not toll subsequent class claims. *See* Cable One Mem. at 11-14; *see also Gomez v. St. Vincent Health, Inc.*, 622 F. Supp. 2d 710, 714 (S.D. Ind. 2008) (stating that *Griffin* "had disallowed tolling for class claims *in all situations*") (emphasis added). The *Griffin* rule is rooted in the policy concern that allowing the tolling of subsequent class claims would "invit[e] abuse" by allowing "putative class members [to] piggyback one class action onto another and thus toll the statute of limitations indefinitely." Cable One Mem. at 12 (quoting *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985)).

Plaintiff's failed attempt to litigate this case in the District of Arizona, only two weeks after this Court dismissed the *Green* lawsuit, was a stratagem to avoid

2

application of the *Griffin* rule.  *See* Cable One Mem. at 7-8.  It was forum shopping, plain and simple, as the Arizona District Court suggested when it transferred the case to this Court.  *See* Transfer Order, Dkt. # 27 ("[o]ne could rationally infer forum shopping here, based on the two previous suits brought by different plaintiffs, on essentially identical complaints.").

In her opposition, Plaintiff does not contest that *Griffin* precludes tolling for her class claim.  To the contrary, Plaintiff effectively concedes that *Griffin* means her class claim may *not* be tolled under *American Pipe*.  *See* Plaintiff's Op. at 2 ("assuming arguendo that Plaintiff's class claims were barred by the statute of limitations, *her individual claim* would be tolled by the filing of either the *Valentine* or *Green* action") (emphasis added).  Plaintiff argues only (and erroneously) that her individual claim in this lawsuit would have been tolled by the prior *Valentine* and *Green* actions.  *See id*. at 14-16.  Plaintiff's exclusive focus upon her individual claim is a tacit admission that the statute of limitations for her class claim has not been tolled.  *See E.E.O.C. v. Riverview Animal Clinic, P.C.*, 761 F. Supp. 2d 1296, 1304 (N.D. Ala. 2010) ("Arguments and issues not addressed in an opposition brief are deemed waived.").

II.   **The Facts Alleged in the Complaint and Subject to Judicial Notice Establish that Plaintiff's Lawsuit Is Time-Barred.**

Because there is — and can be — no dispute that *Griffin* bars tolling of her class claim, Plaintiff's efforts are instead directed to the equally futile task of

3

denying that she had a "reasonable opportunity to discover" the ECPA claim that she asserts arose from Cable One's test of NebuAd's advertising technology on the Internet in late 2007/early 2008, more than two years before her suit was filed on March 10, 2011.  *See* Compl. ¶ 1 (alleging that Cable One tested the NebuAd device "[i]n late 2007 … through early 2008.").  As explained in Cable One's initial brief, ECPA precludes civil actions "commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).  Events that occurred back in 2008, including (i) Cable One's public disclosure of the NebuAd test to Congress on August 8, 2008, (ii) the filing of the *Valentine* complaint on November 10, 2008, and (iii) diminution in the performance of Plaintiff's computer and Internet service that she alleges occurred during the NebuAd test, which ended in "early 2008" (Compl. ¶ 1), are fatal to the notion that she could not have discovered the alleged violation in 2008, as did other Cable One subscribers in Anniston.

      **A.**    **Plaintiff Misstates the Standard Governing a Motion To Dismiss.**

As an initial matter, Plaintiff's articulation of the legal standard governing this motion to dismiss is erroneous in two respects.

First, Plaintiff asserts that a "complaint should not be dismissed for failure to state a claim upon which relief can be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

4

him to relief.'"  Plaintiff's Op. at 5 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  However, this test was "retired" by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) ("In *Twombly*, the Supreme Court expressly 'retired' the 'no set of facts' pleading standard … that the Court had previously established in *Conley v. Gibson*.").  The correct 12(b)(6) standard, which the Supreme Court further refined in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), requires that "[t]o survive a motion to dismiss, a complaint must … state a claim to relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks omitted).  Plausibility "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citations omitted).

Second, Plaintiff repeatedly refers to the absence of "facts in the record," as if to suggest that it is inappropriate to resolve Cable One's statute of limitations defense at the motion to dismiss stage.  Plaintiff's Op. at 2, 5, 11.  However, as one of Plaintiff's very few citations from this Circuit makes clear, a 12(b)(6) dismissal is appropriate "if it is apparent from the face of the complaint that the claim is time-barred."  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotation marks omitted); *see also United States v. Stricker*, 2010

WL 6599489, at *3 (N.D. Ala. Sept. 30, 2010) (explaining that "Rule 12(b)(6) can … provide the appropriate vessel for evaluating a motion to dismiss based on running of the statute of limitations," and dismissing the plaintiff's claims on this basis).

Accordingly, Cable One's motion relies on the Complaint and judicially noticeable facts that Plaintiff does not dispute are appropriately considered in connection with this motion to dismiss.[1]  *See* Plaintiff's Op. at 16.  If these sources establish — as they do — that "relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### B. Plaintiff First Had a Reasonable Opportunity To Discover This ECPA Claim in 2008.

In its initial brief, Cable One demonstrated that Plaintiff had a "reasonable opportunity to discover" the alleged ECPA violation back in 2008:  (i) following Cable One's August 2008 public disclosure of the NebuAd test in Anniston, Alabama (Compl. ¶ 7(a)), and (ii) in no event later than November 2008, by which time other Cable One subscribers filed the *Valentine* class action suit alleging the same violation.  *See* Cable One Mem. at 9-11.  The relevant legal standard does not

---

[1] Plaintiff did not oppose Cable One's separate Request for Judicial Notice, Dkt. # 37, which therefore should be granted.

require that plaintiffs have actual, subjective knowledge of the facts underlying the ECPA claim:

> Like many statutes of limitation, [ECPA's] does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it.

*Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998); *accord, e.g., Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) ("there is no need that someone actually 'discover' or be aware of the violation;" rather, "the question is whether the person had a reasonable opportunity to discover" the alleged violation). Plaintiff fails to explain why she could not have discovered the same alleged violation that other members of her putative class discovered, and sued upon, in 2008.

Although Plaintiff pays lip service to the objective standard that applies to ECPA's statute of limitations (Op. at 6), she ignores its preclusive effect on her lawsuit, arguing instead that she *personally* was unaware of the *Valentine* lawsuit or the Congressional disclosure. *Id*. at 7-8, 11. This argument fails as a matter of law. *See, e.g, Brown v. Schleuter*, 2010 WL 502732, at *2 (W.D. La. Feb. 5, 2010) ("the plaintiff's subjective state of mind is irrelevant" for purposes of ECPA's statute of limitations) (internal quotation marks omitted).

### 1. Cable One's Disclosure of the NebuAd Test to Congress, Coupled with Plaintiff's Allegation of Diminished Computer Performance During the NebuAd Test, Provided a Reasonable Opportunity for Her To Discover the Alleged Interception of Her Internet Communications in 2008.

With respect to the Cable One's public disclosure to Congress in August 2008, Plaintiff makes three principal arguments: (1) that the Complaint does not say that Plaintiff was aware of the disclosure; (2) that there is "no evidence that the letter to Congress was publicly disseminated at that time, or that it was even readily available for Plaintiff to read before this action was filed;" and (3) that the disclosure did not put her on notice of her claim. *See* Plaintiff's Op. at 12-13.[2] These arguments miss the mark.

Plaintiff's first argument fails under the governing standard, which as noted does not depend on her subjective knowledge. *See, e.g., Sparshott*, 311 F.3d at 429. The second is answered simply by pointing to the complaint in *Valentine*, which was filed on November 10, 2008 and which in ¶ 91 reproduced Cable One's disclosure to Congress. That complaint itself was "readily available" to Plaintiff. *See Huntsman-Christensen Corp. v. Entrada Indus., Inc.*, 639 F. Supp. 733, 735-36

---

[2] Plaintiff also argues that "there is no evidence before this Court that Congress investigated Cable One for ECPA violations, or that Plaintiff was or should have been aware of any such investigation." Plaintiff's Op. at 13. This also is beside the point. Cable One's public disclosure that it tested the NebuAd technology in the Anniston market (Compl. ¶ 7(a)) provided an immediate opportunity for Cable One subscribers, like Plaintiff, to discover that a purported violation may have occurred.

8

(D. Utah 1986) (unless under seal, civil complaints are subject to the "well recognized axiom that 'a common law right exists to inspect and copy judicial records'") (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)); *see also* E-Government Act of 2002, § 205(c)(1), Pub. L. 107-347, 116 Stat. 2899, 44 U.S.C. § 3501 Note (requiring federal courts to post pleadings online).

In support of her third argument, Plaintiff argues (Op. at 13) that "[she] does not allege in her Complaint that any of the critical facts to her ECPA claim were disclosed in Cable One's August 8, 2008 letter to Congress." Plaintiff's representation is demonstrably untrue. In fact, the Complaint refers to Cable One's August 2008 disclosure to Congress in support of numerous allegations, including the central allegation that Cable One intercepted user communications. *See* Compl. ¶ 25 ("Cable One implicitly admitted it diverted unfiltered Internet traffic to NebuAd — that is, Internet traffic containing personally identifiable information as well as https traffic, web mail, email, instant messages, and VoIP conversations — when Cable One told a United States Congressional committee that 'no raw data linked to identifiable individuals was stored.'").

Plaintiff attempts to distinguish the cases cited by Cable One by arguing that they involved "information regarding the critical facts of the plaintiffs' claims [that] was either disseminated directly to the plaintiffs or was readily available to

9

the plaintiffs based on prominent public disclosures." [3] Plaintiff's Op. at 13. Plaintiff does not explain in what way the disclosures in those cases were any more "available" or "prominent" than Cable One's disclosure to Congress in August 2008, which is a matter of public record. In any event, Cable One's disclosure certainly was "readily available" and "prominent" no later than November 2008, when (as noted above) other alleged Cable One subscribers in Anniston used it to support their ECPA claim in *Valentine*.

Moreover, it is plain from the face of the Complaint that Plaintiff had a reasonable opportunity to discover the violation herself back in 2008, if not earlier. Plaintiff repeatedly alleges that she experienced problems with her Internet service and her personal computer during the period that Cable One was testing the NebuAd device — problems that *she* asserts were caused by that test. *See, e.g.,* Compl. ¶ 58(e) (alleging NebuAd test caused "diminution in the performance levels of Defendant's services"); *id.* ¶ 59(e) (alleging "diminished performance" of personal computers during NebuAd test, causing "Users to expend money, time, and resources investigating and attempting to mitigate" the causes); *id.* ¶ 60(e)

---

[3] *See* Cable One Mem. at 9-10 (citing *Dayco Corp. v Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (concluding that "congressional proceedings should have aroused [the plaintiff's] suspicions" and, applying an objective standard, dismissing plaintiff's claim under the statute of limitations); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1280-81 (M.D. Fla. 2009) (limitations period commenced with newspaper article that plaintiff had cited in complaint); *Davidco Investors, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *24 (M.D. Fla. Mar. 6, 2006) (limitations period triggered by defendant's public disclosure of financial misstatement forming the basis of plaintiff's claim).

("Through Defendant's interception and diversion of communications … Defendant diminished the utility, value, speed, and capacity of Users' personal computers").  Plaintiff describes herself as one of these "Users."  *Id.* ¶ 6.  Thus, *even under Plaintiff's theory of the case*, she reasonably could have ascertained the purported cause of these alleged problems in approximately August 2008, when Cable One publicly disclosed that it had tested the NebuAd technology in Anniston.  *Id.* ¶ 7(a).

### 2. The November 2008 Filing of the *Valentine* Complaint.

Plaintiff similarly argues (Op. at 7-8) that she was personally unaware of the *Valentine* lawsuit, and thus that action should have no bearing on when the statute of limitations began to run on the *identical ECPA claim* that she filed 28 months later.  But, Plaintiff's subjective knowledge of the *Valentine* lawsuit is irrelevant.

Cable One's point is not that Plaintiff knew about the *Valentine* suit (although, as discussed above, she could have learned about the case through the exercise of reasonable diligence).  Rather, Cable One's argument — which Plaintiff does not address — is that "[i]f *one* member of the putative class was able to file in November 2008 a detailed complaint asserting the same ECPA claim as Plaintiff's current complaint, [relying upon the same public disclosure to Congress in 2008,] then, *a fortiori*, every *other* member of the putative class, *including*

11

*Plaintiff*, had a 'reasonable opportunity to discover' the same claim by that same date." Cable One Mem. at 2; *see also id*. at 10-11.

Lacking any authority to support her position, Plaintiff ties herself in knots trying to distinguish two cases cited by Cable One: *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d. 1053, 1060 (N.D. Cal. 2009), and *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 4117477, at *6-7 (N.D. Cal. Oct. 19, 2010) ("*Wells Fargo*") (limitations period commenced "at the very latest" upon filing of first class-action complaint based on same factual allegations, and dismissing later-filed claims as time-barred).

Plaintiff notes that in *Wells Fargo* the plaintiffs admitted having subjective knowledge of their claim outside the statute of limitations window. Plaintiff's Op. at 9. However, the court in *Wells Fargo* also *explicitly* embraced the analysis that Cable One advances here: the filing of a class claim by one member of a putative class shows that every other member of the same class had a reasonable opportunity to discover the same claim by the date of filing. *See Wells Fargo*, 2010 WL 4117477, at *7 (if prior plaintiffs "were able to file complaints alleging the basis for their claims as of March and April the following year, *this indicates that a reasonably diligent investor should have been able to do the same*") (emphasis added).

Plaintiff's attempt to distinguish *Kreek* suffers from the same defect.  She focuses upon public-record documents, such as a NASD press release and a corporate disclosure, that the court determined placed the plaintiffs on inquiry notice of a possible violation (much like Cable One's public disclosure to Congress placed Plaintiff on such notice).  *See* Plaintiff's Op. at 10-11.  However, the *Kreek* court also relied on an earlier-filed action as a separate basis for dismissing plaintiffs' claims under the statute of limitations:  "The fact that other similarly situated plaintiffs were able to file an identical action … affirms this order's finding that plaintiffs were on inquiry notice more than two years before the complaint was filed in April 2008."  652 F. Supp. 2d at 1060.  Just so here.

In sum, under the discovery rule incorporated into the ECPA statute, Plaintiff's cause of action accrued "when a reasonably diligent plaintiff would have discovered[] the facts constituting the violation. . . ."  *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1789 (2010) (internal quotation marks omitted).  Other members of Plaintiff's putative class had discovered the purported violation by November 10, 2008, when *Valentine* was filed, and relied upon the same public disclosure to Congress.  Thus, the statute of limitations on the instant ECPA claim expired no later than November 10, 2010 — four months *before* Plaintiff filed this lawsuit.  The law does not reward Plaintiff for being less attentive than her peers, or for sitting on her rights.

13

## III. Plaintiff's Individual Claim Is Not Tolled.

Plaintiff argues that *Griffin* "held that *American Pipe* tolling applies to all putative class members' claims during the pendency of a class action even when no class representative has standing to bring the class claims asserted." Plaintiff's Op. at 14 (emphasis omitted). This characterization misstates the holding of *Griffin* as to individual claims. As Cable One acknowledged (*see* Mem. at 15 n.9), the statute of limitations was tolled for the individual claims (but not the class claims) in *Griffin*. However, the prior plaintiffs had standing to file the initial case, and the Eleventh Circuit placed emphasis on the fact that a class had been certified in the first action until a change in governing law subsequently deprived the plaintiffs of standing and resulted in a decertification. *See* 17 F.3d at 360. That is not so here.

*Griffin* does not hold that individual claims will *always* be tolled by a prior class action lawsuit. An individual plaintiff still bears the burden of pleading facts supporting application of the tolling doctrine to his or her claim. *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). Here, unlike in *Griffin*, Plaintiff has not met this burden because she has not even alleged that any prior named plaintiff appears to have *ever* had standing to sue Cable One on these claims. Plaintiff does not discuss the named plaintiffs in *Green* and *Valentine* who sued Cable One. As Defendant previously explained, the Court in *Green* expressly held that Mr. Green had no standing to sue Cable One, and Plaintiff has alleged no facts from which the

14

Court could plausibly infer that Ms. Rimpsey had standing to sue Cable One in *Valentine* before the case was dismissed for lack of personal jurisdiction. (Ms. Rimpsey did not reappear as a named plaintiff in *Green*.) *See* Cable One Mem. at 16. Without any plausible allegation to satisfy the predicate for *American Pipe* tolling of Plaintiff's individual claim — *i.e.*, that the prior named plaintiffs had standing — Plaintiff's individual claim is time-barred as a matter of law.

## CONCLUSION

For the foregoing reasons and those stated in Defendant's Memorandum in Support of Motion to Dismiss, Cable One respectfully requests that the Complaint be dismissed with prejudice.

| | |
|---|---|
| Eric C. Bosset *(pro hac vice)*<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, DC  20004<br>Telephone: (202) 662-5606<br>Fax: (202) 662-6291<br>ebosset@cov.com | By:   /s Robert J. Campbell<br>Michael R. Pennington<br>Robert J. Campbell<br>BRADLEY ARANT BOULT<br> CUMMINGS LLP<br>One Federal Place<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 521-8000<br>Fax: (205) 521-8800<br>mpennington@babc.com |
| Simon J. Frankel *(pro hac vice)*<br>COVINGTON & BURLING LLP<br>One Front Street<br>San Francisco, CA  94111<br>Telephone: (415) 591-6000<br>Fax: (415) 591-6001<br>sfrankel@cov.com | rcampbell@babc.com<br><br>Michael D. Hays *(pro hac vice)*<br>Jonathan D. Hart *(pro hac vice)*<br>DOW LOHNES PLLC<br>1200 New Hampshire Avenue, NW,<br>Suite 800<br>Washington, DC  20036-6802<br>Telephone: (202) 776-2000<br>Fax: (202) 776-2222<br>mhays@dowlohnes.com |
| Dated:  December 7, 2011 | *Counsel for the Defendant* |

16

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 7, 2011, I caused the attached document to be electronically submitted to the Clerk's Office using the CM/ECF System for filing and served a true and correct copy via U.S. Mail, proper postage affixed thereto, on following:

| | |
|---|---|
| Jeffrey P. Leonard, Esq.<br>HENINGER GARRISON DAVIS, LLC<br>2224 1st Avenue North<br>Birmingham, Alabama  35203 | Paul A Traina<br>Steven J. Lipscomb<br>ENGSTROM LIPSCOMB & LACK<br>10100 Santa Monica Blvd., 12th Fl.<br>Los Angeles, CA 90067 |

                                              s/ Robert J. Campbell
                                              One of the Attorneys for Defendant